UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MANUEL MORALES, | ) | No. ED CV 07-01549-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION |
| v. | ) ) | AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | (Social Security Case) |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.

Plaintiff raises the following issues:

1. Whether Plaintiff's non-exertional impairments rendered use of the "Grids" inappropriate and instead required testimony from a vocational expert ("VE");
2. Whether the Administrative Law Judge ("ALJ") failed to properly analyze Plaintiff's diabetes as a non-Listing level impairment;
3. Whether the ALJ failed to develop the record;
4. Whether the ALJ improperly rejected the opinion of Plaintiff's treating physician; and
5. Whether the ALJ properly discredited Plaintiff's credibility.

After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed, and the matter remanded for a new hearing.

**I**

**THE ALJ DID NOT ERR IN UTILIZING THE GRIDS**

**AS A FRAMEWORK FOR DECISION-MAKING**

After finding that Plaintiff could not return to his past relevant work as a machine shop laborer, at Step Four of the sequential evaluation analysis (see AR at 24), the ALJ proceeded to the Step Five analysis; that is, determining whether work existed in the national economy that Plaintiff could perform. In making this determination, the ALJ referenced the Medical-Vocational Guidelines, found at 20 C.F.R. part 404, subpart P, appendix 2 (the "Grids"). (AR at 25.) The finding of the ALJ with regard to use of the Grids which Plaintiff contests in the first issue is contained in the following

2

portion of the Decision:

> "If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.25 or 26. However, the additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of 'not disabled' is therefore appropriate under the framework of this rule. I see no reason why the claimant cannot perform a medium exertional level of work including the job of machine shop assembler cited by the State Agency vocational consultants at 2E-2. The non-exertional limitations assessed would not

3

1 significantly narrow the range of medium work available."
2 (AR 25.)

4 Plaintiff's argument, in its essential form, is that he has
5 significant non-exertional limitations which require the use of a VE,
6 and thus rendered the ALJ's reliance on the Grids inappropriate.

**A.   Applicable Law**.

Once Plaintiff has established that he is unable to return to his past relevant work (or that he has no past relevant work), the burden shifts to the Commissioner to establish the existence of other jobs which exist in significant numbers which Plaintiff can perform considering his age, education, residual functional capacity, and vocational profile. The Commissioner can meet this burden either by utilizing the Medical Vocational guidelines ("Grids") in Appendix 2, Subpart P, 20 C.F.R. Part 404 or by calling upon the services of a vocational expert. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

Identical principles regarding application of the Grids were articulated by the Ninth Circuit in its decision in Polny v. Bowen, where the following discussion ensued:

> "The major issue on appeal is whether the administrative law judge erred in applying the grids in this case where the applicant's impairment was not exertional. The Secretary argues that Polny had no 'significant nonexertional restriction' and so the application of the grids was appropriate. In Razey v. Heckler, 785 F.2d 1426 (9th Cir.), modified 794 F.2d 1348 (1986), we held that where

4

> an applicant had both exertional and nonexertional limitations the use of the grids was permissible. That decision, in accord with other authority - e.g., <u>Lebron v. Secretary of Health and Human Services</u>, 747 F.2d 818 (1st Cir. 1984) - recognizes the force of the Secretary's own regulations which state that the grids apply where an individual has a 'combination of impairments resulting in both strength limitations and nonexertional limitations.' 20 C.F.R. Pt. 404, Subpt. P, App. 2, §200.00(e)(2)."

(864 F.2d at 663.)

In <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 576-577 (9th Cir. 1988), the Court also held that Social Security law does not preclude application of the Grids in cases which present non-exertional limitations: "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by her exertional limitations." (<u>Id</u>. at 577.)

The Commissioner's own regulations and rulings are also consistent in defining the scope and limits of the applicability of the Grids. Thus, in Social Security Ruling ("SSR") 83-14, the following illustrative discussion is found:

> "Section 200.00(e)(2) of Appendix 2 provides that, 'where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's

>maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.'"

(SSR 83-14.)

SSR 83-14 also notes that:

>"A particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of 'Not disabled.' On the other hand, an additional exertional or nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of 'Disabled.'"

(SSR 83-14.)

Numerous examples are provided in the regulations. In SSR 83-14,

for example, it is noted that in jobs at the medium level of exertion, there would be more of a likelihood of a requirement to ascend or descend ladders and scaffolding, to kneel, and crawl, but "limitations of these activities would not significantly affect the occupational base." SSR 83-14 notes that where it is clear that additional non-exertional limitations or restrictions have very little effect on the exertional occupational base, the conclusions directed by the Grids would not be affected. In cases where such limitations have significantly eroded the exertional job base, it is directed that the remaining portion of the job base will guide the decision. It is only "where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, [that] the services of a VS [vocational expert] will be necessary." (SSR 83-14.)

   **B.   <u>Analysis</u>**.

In Plaintiff's case, the ALJ determined that the non-exertional limitations which he assessed would not significantly narrow the range of available medium work. The question, then, is whether substantial evidence supports that finding. The non-exertional limitations which were determined by the ALJ as part of Plaintiff's residual functional capacity ("RFC") included an ability to frequently stoop, kneel, crouch and crawl; to occasionally climb and balance; to avoid concentrated exposure to extreme cold and heat; and to avoid working at heights or around hazardous or unprotected machinery. (AR at 22.) Plaintiff seemingly argues that the mere existence of these non-exertional limitations renders application of the Grids improper. (<u>See</u> JS at 11.) But, this is not the conclusion which must be drawn from the applicable cases or regulations. The ALJ reviewed the medical

evidence in the file in determining Plaintiff's RFC. He severely depreciated the credibility of the findings of Dr. Grogan. The consultative examination ("CE") performed by Dr. Rocely Ella-Tomayo at the request of the Department of Social Services (AR 131-135) concludes that Plaintiff has no postural restrictions whatsoever, including kneeling and squatting. (<u>See</u> AR at 135.) As noted by the ALJ, also, Dr. Grogan himself performed a physical examination which essentially found normal orthopedic results, such as range of motion of the extremities, motor strength, sensation, reflexes, and grip strength. (<u>See</u> AR at 129.)

There is some evidence of bilateral peripheral neuropathy resulting from Plaintiff's severe impairment of diabetes mellitus, which was noted by Dr. Grogan (<u>see</u> AR at 129), and some symptoms of which were testified to by Plaintiff during the hearing. (<u>See</u> AR at 226.) It is fair to say that a liberal reading of these findings, and of Plaintiff's testimony, could result in an assessment of the mild non-exertional limitations found by the ALJ. For example, Dr. Grogan found decreased sensation to light touch below the level of the knees bilaterally. (AR 129.) Allocating at least some level of credibility to Dr. Grogan's findings would substantiate some of the non-exertional limitations found by the ALJ.

Plaintiff also cites what he asserts are "additional and significant non-exertional impairments that were not included in the ALJ's RFC finding..." (JS at 12.) These include diabetic retinopathy; continuing problems with diabetic ulcers on his lower extremities; kidney issues in the form of priteinuria, and some dizziness and drowsiness from side effects of medications. Further, Plaintiff cites his lack of literacy in English. (JS at 12-13.)

With regard to Plaintiff's lack of literacy in English, in Plaintiff's type of work, which is generally unskilled work, the Grids provide that illiteracy or an inability to communicate in English do not significantly erode the job base. (See 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(g)(2007).)

Concerning the other asserted non-exertional impairments, Plaintiff has not cited any evidence to indicate that any such impairments have a significant impact on the disability analysis, in terms of his ability to work. Simply put, as often stated, it is not the existence of a diagnosis which has ultimate impact on the disability analysis; rather, it is a demonstration that a diagnosis of a particular condition includes relevant functional limitations. The latter simply have not been demonstrated.

For the foregoing reasons, the Court finds that Plaintiff's first issue has no merit.[1]

## II

## **THE ALJ FAILED TO UNDERTAKE OR ARTICULATE**
## **IN HIS DECISION THE APPROPRIATE ANALYSIS AT STEP THREE**
## **OF THE SEQUENTIAL EVALUATION PROCESS**

In a "Pre-Hearing Memorandum" filed by his representative (AR 95-

---

[1] Plaintiff notes that his lack of English language skills would render him unqualified to perform the one occupation identified: machine shop assembler. As Plaintiff notes, the DOT requirements for this position require a Language Development level of 2, which would appear to be beyond Plaintiff's capacities. Assuming that Plaintiff's argument is correct with regard to this identified occupation, the Court deems any error to be harmless. Plaintiff was determined to be not disabled by utilization of the Grids as a framework. As such, it was not the obligation of the ALJ to identify any particular occupations at Step Five of the sequential evaluation. Doing so was superfluous.

105), it was asserted that Plaintiff "is suffering from a combination of medically severe impairments that [sic] equivalent to... [Listing] 9.08 diabetes mellitus." (AR 98; see also AR 208, Plaintiff's Appeal to the Appeals Council: "The ALJ committed reversible error in failing to find or to clearify [sic] why is it that Mr. Morales' diabetes mellitus condition does not meet or equivalent [sic] 9.08 diabetes mellitus..." (AR 208).)

The ALJ's decision simply concludes that,

> "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."

(AR 22.)

### A. **Applicable Law**.

The Commissioner is required to consider Plaintiff's impairments in light of the Listing of Impairments ("Listings"). 20 C.F.R. Part 404, Subpart 404 P, Appendix 1. The Listings set forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. §416.925(a)(2000).

Plaintiff's impairments need not precisely meet the criteria of a Listing in order to obtain benefits. If Plaintiff's impairment or combination of impairments is medically equivalent to one in the Listings, disability is presumed and benefits are awarded. 20 C.F.R. §416.920(d)(2000); Barker v. Secretary of Health and Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989); Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the

alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §416.926(a)(2000). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §416.926(b)(2000).

The mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability. It must be shown that the findings for that impairment are found in the record. Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Further, Plaintiff must establish that he satisfies all of the criteria of the applicable Listing. (See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885 (1990).

The Ninth Circuit has held in Lewis v. Apfel 236 F.3d 505 (9th Cir. 2001), that,

> "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so. See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)(holding that ALJ erred by failing to consider evidence of equivalence)."

(236 F.3d at 512.)

In Lewis, the Circuit upheld the ALJ's conclusion that Plaintiff did not meet a Listing because the ALJ's analysis and discussion of the evidence in the body of his decision noted that the Plaintiff did not comply with his prescribed treatment. The particular Listing at issue in that case required the presence of certain symptoms "in spite

11

of at least 3 months of prescribed treatment." (<u>See</u> <u>Id</u>., at 513, fn 10.)

Plaintiff correctly notes that there is significant medical evidence in the record which could demonstrate that he meets or equals the Listing for diabetes mellitus (Listing 9.08). Certainly, there is significant evidence of neuropathy, as documented by a number of sources: Dr. Grogan; the CE report of Dr. Ella-Tomayo, and records of Plaintiff's treating physicians, at the Molina Medical Center. (<u>See</u>, e.g., AR 158.)  Other than depreciating the findings of Dr. Grogan, the ALJ completely failed to discuss the records of Plaintiff's treating physician, or even the conclusions of the CE, in which it was noted, under "Diagnostic Impression," that Plaintiff suffered from "diabetes mellitus with peripheral neuropathy of the lower extremities." (AR 135.) Moreover, there would appear to be laboratory records in the file which require evaluation under subsection "B" of Listing 9.08.

While the Commissioner correctly notes that it is Plaintiff's burden to show that he meets or equals a Listing (<u>see</u> JS at 23-26), citation to this principle does not save the ALJ's decision. Plaintiff did present evidence relevant to the symptoms described under the Listing. There was simply no discussion of this evidence in the decision. That, in itself, distinguishes Plaintiff's case, and the decision being reviewed, from those cases, such as <u>Lewis v. Apfel</u>, where the ALJ's discussion and evaluation of the medical evidence provided a sufficient basis for review of the determination that the claimant did not meet or equal a Listing. Here, there is no such discussion. Moreover, in determining Plaintiff's RFC, the ALJ articulated his reliance on the conclusions of the State Agency

Physicians (see AR at 139-148), who, of course, never examined Plaintiff. Moreover, there is nothing in the report of these State Agency Physicians regarding Listing 9.08 other than it was "considered." (See AR at 139.) Again, this provides nothing in the way of substance which would permit adequate review.

The Court's determination to reverse and remand for further hearing on this issue incorporates Plaintiff's argument in his third issue, where he asserts that the ALJ failed to fully and properly develop the record. Plaintiff asserts that the ALJ should have ordered an orthopedic CE to determine if he suffered from degenerative disc disease in his cervical and lumbar spine. The ALJ, as noted, severely depreciated Dr. Grogan's findings, finding them to be "grossly exaggerated and accommodative." (AR 24.) Nevertheless, the Court is concerned that there should be adequate medical evidence in the record from which to determine if Plaintiff meets or equals Listing 9.08. Dr. Ella-Tomayo noted the presence of peripheral neuropathy, but it may be the case that a medical expert ("ME") must be utilized, or, that Plaintiff should receive additional and specific examination with regard to the effects of his diabetes mellitus, with particular regard to the Listing requirements.

### III

### **THE ALJ DID NOT ERR IN HIS EVALUATION OF DR. GROGAN AS A NON-TREATING PHYSICIAN**

As noted, the ALJ depreciated the conclusions of Dr. Grogan regarding Plaintiff's condition. (See AR at 24.) Plaintiff first asserts that Dr. Grogan was his treating physician.

Dr. Grogan saw Plaintiff for the first time on September 30, 2004

(AR 119-130); then, over two years later on November 28, 2006 (AR 201-205); and finally, on January 29, 2007 (AR 196-200, 219). Thus, in the space of over two years, Dr. Grogan saw Plaintiff three times. Further, the records of Dr. Grogan's examinations indicate no administration of medication; no treatment regimen; or anything else that one normally associates with care provided by a treating physician. Plaintiff's citation of case law regarding a numerical calculation of whether a doctor is a treating source is misplaced. The definition of treating source is discussed, in part, in 20 C.F.R. §404.1502 and, consistent with this Court's above discussion, consists of a physician or other acceptable medical source who "has provided you... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." While the number of visits is not determinative, it is relevant to the medical need for treatment and evaluation, based on a person's specific condition. Here, Plaintiff primarily suffers from diabetes mellitus, and sees his actual treating source, Molina Medical Center, approximately every three months. Plaintiff himself identified Molina as his treating source. (See AR at 228-229.) Moreover, Dr. Grogan indicated he was not Plaintiff's treating source. (AR 203.)

On remand, the medical evidence in the record will be reconsidered, in addition to new evidence. For this reason, the Court will not further address the ALJ's evaluation of Dr. Grogan's opinion at this time.

//
//
//

**IV**

**THE ALJ IMPROPERLY DISCREDITED PLAINTIFF'S CREDIBILITY**

Plaintiff asserts that the ALJ improperly discredited his credibility. He is correct. In the decision, the ALJ based his credibility finding on the following factors, <u>inter</u> <u>alia</u>:

1. Plaintiff was fired from his last job and drew the full round of unemployment insurance which required repeated certification of being ready and willing to work. Plaintiff has not looked for work after unemployment insurance ran out;
2. The ALJ disbelieved that Plaintiff could not speak English, despite being in the United States for at least 25 years because "I seriously doubt that after 25 years residence in this country he is unable to express himself in English."
3. Plaintiff said his hands and feet are numb. He just started taking insulin two weeks ago and takes medications for blood pressure;
4. Plaintiff sees his treating physician at Molina Medical Clinic at irregular intervals;
5. Plaintiff said he has not driven in nine years, and lives in a house with his employed wife and children;
6. Plaintiff would not detail his activities of daily living ("ADL") despite repeated questions;
7. Plaintiff's self-assessment of his ability to stand, walk, lift and sit is unsupported by any clinical or diagnostic findings.

(AR 23-24.)

The law concerning the requirements for credibility assessment

15

1 are contained in the Commissioner's own regulations, at 20 C.F.R.
2 §404.1529(c), and have often been stated in Ninth Circuit Opinions.
3 (See Thomas v. Barnhart, 278 F.3d 947, 959-960 (9th Cir. 2002.)

4 Because this case will be remanded, it is necessary for the Court
5 to address the factors relied upon by the ALJ, so that the same
6 mistakes are not made again.

7 Discrediting Plaintiff because he does not speak English despite
8 having lived in the United States for 25 years, without any evidence
9 in the record indicating that he does speak more English than he
10 admits, is a speculative conclusion not worthy of a judicial opinion.

11 Plaintiff's statement that his hands and feet are numb is
12 certainly supported, as to his feet, by substantial medical evidence
13 that he has peripheral neuropathy.  The ALJ's assertion that Plaintiff
14 just began taking insulin two weeks ago is a misstatement of the
15 record.  The evidence indicates that Plaintiff had been taking insulin
16 by injection for two weeks, and had to change from taking his
17 medication in tablet form due to side effects the medication had on
18 his kidneys. (See AR at 230-231.)  Plaintiff has taken medication for
19 his diabetes for many years. (AR 81, 86, 132, 160.)

20 Any failure to obtain information regarding the extent of
21 Plaintiff's ability to do ADLs lies with the ALJ, who asked only a few
22 questions during the hearing, all of which Plaintiff answered. (See AR
23 at 229-230.)

24 Plaintiff does not see his treating source at Molina Clinic at
25 irregular intervals.  He goes approximately every three months.  There
26 is nothing in the record to indicate that this is less frequent than
27 required by his medical condition.

28 The fact that Plaintiff has not driven a car in nine years,

combined with the fact that he lives in a house with his employed wife and children, constitute a series of non sequiturs with regard to the credibility analysis.

The ALJ's statement, as part of the credibility analysis, that, "I find no reason in this record why the diabetes mellitus could not be controlled with an appropriate ADA diets and properly titrated dosages on insulin" (AR 24) constitutes an improper medical opinion by the ALJ which is, moreover, unsupported by anything this Court has found in the record.

Finally, reliance on Plaintiff's receipt of six months of unemployment insurance "which required repeated certification of being ready and willing to work" (see AR at 23-24) is unfounded. The record contains no forms or documents indicating that Plaintiff ever certified his ability to work full time while he received benefits, nor did Plaintiff so testify at his hearing, at which he merely acknowledged receipt of such benefits for approximately six months. (See AR at 224.) The ALJ's legal or factual conclusions as to the "requirements" of the forms are not supported by the record.

All in all, the credibility assessment in this case is completely unsupported by any legitimate facts. On remand, a proper credibility assessment will be undertaken.

For the foregoing reasons, this matter will be remanded for further hearing.

**IT IS SO ORDERED.**

DATED: September 8, 2008             /s/
                                     VICTOR B. KENTON
                                     UNITED STATES MAGISTRATE JUDGE